UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
Civil Action No.  04-CV-11948

SEYED MOHSEN HOSSEINI-SEDEHY,

Plaintiff

v.

ERIN T. WITHINGTON
and CITY OF BOSTON

Defendants

**DEFENDANT DETECTIVE ERIN T. WITHINGTON'S MEMORANDUM
IN  SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Defendant Erin T. Withington ("Detective Withington") incorporates by reference

the facts set forth in the attached Defendant, Officer Erin T. Withington's Local Rule

56.1 Statement of Facts.  Plaintiff, Seyed Mohsen Hosseini-Sedehy ("Plaintiff"), filed

suit against Boston Police Detective Erin T. Withington, and the City of Boston on

September 2, 2004.  (Ex. 1, Pl.'s Complaint).  Plaintiff alleges that Detective Withington

falsely arrested him without probable cause and violated his constitutional right to be free

from unreasonable seizures.  (Id.).  For the reasons provided below, Detective Withington

moves for summary judgment as to all counts in Plaintiff's Complaint related to her.

**II.     ARGUMENT**

   **A.     Application of the Summary Judgment Standard Warrants Dismissal of
          the Plaintiff's Complaint Against**

Pursuant to Fed. R. Civ. P. 56(b), "[a] party against whom a claim…is

asserted…may, at any time, move with or without supporting affidavits for a summary

judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Fed. R. Civ. P. 56(c).  See also Sheppard v. Aloisi, WL 2082905 (D.  Mass. 2005).

Summary judgment is appropriate when a Plaintiff fails to show sufficient evidence to establish an essential element of his case, on which he bears the burden at trial.  See Cleveland v. Policy Mgmt. Sys. Corp., 536 U.S. 795, 805-806 (1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial.  See id. at 324. In evaluating motions for summary judgment, however, the court will not consider " 'mere allegations,' or draw inferences where they are implausible or not supported by 'specific facts.' " Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir.1991). Here, as explained below, Plaintiff cannot meet the burden establishing a single issue in dispute that is both genuine and material.  Within this analytical framework, Detective Withington is entitled to summary judgment in her favor.

B.     **Detective Withington Had Probable Cause to Arrest Plaintiff and Therefore She Did Not Violate Plaintiff's Constitutional Rights Under § 1983.**

The summary judgment record establishes that Detective Withington had sufficient probable cause to arrest the Plaintiff and that no constitutional violation occurred.  The facts and circumstances known to Detective Withington at the time of the

Plaintiff's arrest provided her with reasonably trustworthy information that the Plaintiff had committed and was continuing to commit an indecent assault and battery upon the alleged victim, John Doe.[1] As the First Circuit has explained, "Probable cause is a relatively low threshold, defined 'the facts and circumstances within [an officer's] knowledge and of which [she] had reasonably trustworthy information [and that] were sufficient to warrant a prudent [person] in believing the [defendant] had committed or was committing an offense." White v. Town of Marblehead, 989 F. Supp. 345 (D. Mass. 1997), citing Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992). "If reasonable grounds to arrest exist, probable cause is established and there is no further duty to investigate." Id., citing Franco-de Jerez v. Burgos, 876 F.2d 1038 (1st Cir. 1989) (omitting footnote). And, moreover, "though probable cause requires more than mere suspicion, it does not require the same quantum of proof as is needed to convict." Id. "Credible words describing a coherent and dangerous narrative are enough to establish probable cause." Id.(omitting citation). The First Circuit has recently held:

> Probable cause for an arrest exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators…the focus is not on certitude, but rather on the likelihood of criminal activity.

Acosta v. Ames Departments Stores, 386 F.3d 5, 10 (1st Cir. 2004). The existence of probable cause depends on the "totality of the circumstances." Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992). The undisputed facts of this case establish that Detective Withington had probable cause to arrest the Plaintiff. As the summary judgment record

---

[1] Pursuant to the Massachusetts rape shield statute, any alleged victims will be referred to by pseudonyms. Additionally, the exhibits to this Motion will be filed under separate cover along with an appropriate protective motion.

establishes, John Doe, the alleged victim in this case, had consistently and credibly lodged numerous complaints of indecent assault and battery against the Plaintiff.

Detective Withington and the Boston Police Sexual Assault Unit had received several complaints from the alleged victim claiming that the Plaintiff had committed an indecent assault and battery against him. (Ex. 2, Deposition of Erin T. Withington, at 15:6-16; 27:15-19; 28: 16; 31:7-8; 36: 1-3).   In particular, Detective Withington interviewed John Doe on or about December 22, 2003.  (Id. at 15:6-16). During the interview, he stated that he was a Teamster who worked out of the Hynes Convention Center and other locations. (Id. at 15:6-16). He identified the Plaintiff as his boss and stated that on numerous occasions, when he bent over, the Plaintiff would walk by him so the front of the Plaintiff's groin would rub against his buttocks as he walked by.  (Id. at 15:6-16). He stated that at all times, both and he and the Plaintiff were fully clothed. (Id. at 15:6-16).  John Doe also described another incident that occurred on a loading dock during which the Plaintiff allegedly grabbed him by the shoulders, ground his crotch against Doe's crotch and then kissed him on the cheek. (Id. at 15:17-22).   Doe also alleged that he had complained about the Plaintiff's conduct with management, but that nothing had been done.

At his interview with Detective Withington, Doe was accompanied by a co-worker, a Mr. Smith[2], who advised Detective Withington that he was there to support Doe. (Id. at 15:6-7).  Additionally, Detective Withington also learned from Mr. Smith that the Plaintiff had also allegedly assaulted him. Pursuant to the Massachusetts rape shield statute, any alleged victims will be referred to by pseudonyms. (Id. at 17:5-11). Smith informed Detective Withington that the Plaintiff had touched his buttocks and

---

[2] Pursuant to the Massachusetts rape shield statute, any alleged victims will be referred to by pseudonyms.

kissed him on the cheek on numerous occasions. (Id. at 17:5-11).  Smith, however, also indicated that he did not wish to bring any charges against the Plaintiff.  (Id. at 17:5-11).

In addition to Doe's complaints, Detective Withington attempted to gather more information regarding the alleged incident.  Detective Withington attempted to contact Doe' co-worker and foreman of the union to identify the Plaintiff's first name.  (Id. at 18:9-19).  Once contacted, this individual refused to assist Detective Withington, but did refer her to a contact number in New Jersey for the Plaintiff's employer, GES Exposition Services ("GES").  (Id. at 18:9-19). When Detective Withington contacted this New Jersey number, she was advised that no information would be provided to assist her.  (Id. at 18:9-19; 20, 20-24).  While Detective Withington was able to confirm that the Plaintiff worked at the location alleged by Doe, she was unable to obtain his full first name or any telephone number to reach him.  (Id. at 18:9-19; 20, 20-24). She then contacted Doe a second time to explain her difficulty in obtaining additional information regarding her investigation, including contact information for the Plaintiff.  (Id. at 18:20-24; 19, 1-9). Subsequently, between the period of December 22, 2003 and January 7, 2004, Detective Withington was able to speak to another individual who ultimately provided her with the Plaintiff's cell phone number. (Id. at 18:9-19; 20, 20-24).

Due to a disabling injury, Detective Withington was on disability leave from approximately January 7, 2004 through approximately March 7, 2004. (Id. at 19: 11-13). During that time, Detective Withington had also learned that Doe had continued to contact her regarding his allegations.  (Id. at 34: 13-19).  She also learned that the Plaintiff had returned her call.  (Id. at 34:13-19).  Detective Withington then returned their calls and left messages indicating that she was out on leave that she would contact

them again upon her return to work. (Id. at 35: 1-5). Following her return from disability

leave, Detective Withington learned that a retired police officer, Jimmy Flynn, informed

her that while he did not see the actual touching Doe was referring to, he did hear the

Plaintiff and Doe yelling during an incident on the dock. (Id. at 41: 3-8). Additionally, as

part of her investigation, Detective Withington also interviewed the Plaintiff. (Id. at 43:

5-23). During this interview, the Plaintiff himself corroborated part of Doe's story. (Id.

at 43: 5-23). Although the Plaintiff never actually admitted inappropriately touching

Doe, he did advise Detective Withington that he did touch Doe once by the dock and that

touching caused Doe to start to "freak out and yell." (Id. at 43: 5-23).

During her investigation, Doe continued to contact Detective Withington with

additional information, including contact information for another individual she could

speak with regarding the Plaintiff and also additional information that the Plaintiff had

also touched and rubbed his arm while at work. (Id. at 29:4-19; 31:1-8).    He also

apprised her of other interactions he had with the Plaintiff.  (Id. at 29:4-19). He also

advised her that other individuals were complaining and that he was encouraging them to

come forward. 4-19; 31:1-8).   He also apprised her of other interactions he had with the

Plaintiff.  (Id. at 29:4-19). Over a period of several months, the alleged victim continued

to contact Withington and the Sexual Assault Unit to report the Plaintiff's continuing

inappropriate conduct during the period of December 2003, (Id. at 9: 10) and  March

2004, (Ex. 1).  On or about March 22, 2004, the alleged victim also advised Detective

Withington that the Plaintiff's conduct had continued and that on that day, while Doe was

at work, the Plaintiff had rubbed his arms and rubbed up against him. (Id. at 47: 10-21).

He also apprised her of other interactions he had with the Plaintiff.  (Id. at 29:4-19).Thus,

on March 22, 2004, Detective Withington filed a criminal complaint against the Plaintiff on charges of indecent assault and battery against Doe and received an arrest warrant for the Plaintiff from the Boston Municipal Court.  (Ex. 3, Criminal Complaint and Arrest Warrant). The Plaintiff was then subsequently arrested on March 22, 2004 at the Hynes Convention Center.[3]  (Ex. 3, Incident Report).

The accumulation of such facts garnered by Detective Withington more than sufficiently established probable cause to arrest the Plaintiff.  The First Circuit has held that "[a]n asserted victim of a crime is a reliable informant even though his or her reliability has not theretofore been proven or tested." Nelson v. Moore, 470 F.2d 1192, 1197 (1st Cir. 1972). "Victims' complaints are a prime source of investigatory information for police officers."  Acosta, supra at 10.   Moreover, "[t]he uncorroborated testimony of a victim or other percipient witness, standing alone, ordinarily can support a finding of probable cause." Id., citing Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir.2004) (stating that information furnished by a victim is generally considered sufficiently reliable to support a finding of probable cause); B.C.R. Transport, 727 F.2d at 10(same).  The First Circuit "has affirmed that police officers can justifiably rely upon the credible complaint by a victim to support a finding of probable cause." Forest v. Pawtucket Police Dept., 377 F.3d 52, 57 (1st Cir. 2004).   Here, the evidence established that at the time the Plaintiff was arrested, Detective Withington had sufficient probable cause to believe that the Plaintiff had committed a crime, namely the indecent assault and battery against the alleged victim, and on more than one occasion.  Detective Withington could have solely relied on the credible complaints by the alleged victim, and

---

[3]  The charges against the Plaintiff, however, were subsequently nolle prossed by the District Attorney's Office.  (Ex. 4, District Attorney's Nolle Prossequi Motion).

7

that alone constituted sufficient probable cause.    However, Detective Withington conducted additional investigation following his report of allegations against the Plaintiff. She also had information by the alleged victim's co-worker that the Plaintiff had also assaulted him.  At the time she sought an arrest warrant for the Plaintiff, she knew others had made complaints about his touching, others had seen the Plaintiff and Doe on the loading dock together, and that the Plaintiff had in fact had some kind of physical contact with Doe, by the Plaintiff's own admission.

Even if Detective Withington could not corroborate the complaint Doe was making, she was still entitled, under the governing case law, to choose to believe the complaining victim, White v. Town of Marblehead, 989 F. Supp. 345 (D. Mass. 1997). In White, an alleged victim accused her boyfriend of assault and harassment. Unlike the case at bar, the police in White did not even attempt to corroborate her complaint with anyone at the bar where the alleged assault had taken place, including the bartender who not only witnessed the whole incident, but also served as the person who placed the call to police. Id. at 347.  Later the next day, the arresting officer filled out a criminal complaint form and submitted the paperwork to the clerk at the District Court. The clerk authorized the issuance of a criminal complaint against White and a warrant for his arrest was issued. Id. at 348. It was later discovered by the officer who filed the complaint with the clerk that another officer had followed up on the initial complaint and had spoken to several witnesses who told a different story than the alleged victim. Their story, in fact, almost exactly corroborated the story the alleged attacker, White, told this officer the following day. Id. The court in White noted that the arresting officer did not have the benefit of the information that the other officer discovered when the first officer

presented the information to the clerk. However, the court found that the first officer had no obligation to investigate any further beyond they "coherent story which the officers found credible." Id. at 349.  The court in White rationalized that probable cause has a low threshold when it stated: "While in this case, the victim's version ultimately proved to be unreliable, permitting the police to rely on a victim's credible statement in order to determine probable cause is critical. A rule requiring police officers to second guess an otherwise coherent and credible witness, to somehow seek corroboration, risks inconsistent and unequal application." Id. at 350.

The reasoning in White therefore applies with equal force here.  Any argument by the Plaintiff that additional investigation was necessary does not alter the inevitable conclusion here that Detective Withington had sufficient probable cause to arrest the Plaintiff.  "Once a law enforcement officer unearths sufficient facts to establish probable cause, she has no constitutional duty to either explore the possibility that exculpatory evidence may exist or to conduct any further investigation in the hope of finding such evidence."  Acosta supra at *17.  In sum, probable cause is the only requirement for a constitutional arrest per the Fourth Amendment.  Based on the facts of this case, Detective Withington had probable cause to arrest the Plaintiff, and it logically follows that Detective Withington did not violate Plaintiff's Fourth Amendment rights.

C.    **Detective Withington Acted  Reasonably and Her Conduct Is Protected by  Qualified Immunity.**

"Qualified Immunity is an affirmative defense for government officers in §1983 suits which allege constitutional violations." Jarrett v. Town of Yarmouth, 309 F.3d 54, 61 (1st Cir.  2002).  Qualified immunity is available to protect police officers from

personal liability in response to actions made in their official capacity.  Anderson v.

Creighton, 483 U.S. 635, 638 (1987).  Without qualified immunity, all decisions and

actions by every police officer would require time and analysis that is often not available

to the officers and would act as a detriment to the police properly performing their

functions.  See Vargas-Badillo v. Diaz-Torres, 114 F.3d. 3, 7 (D. Puerto Rico, 1997).

"We have recognized that it is inevitable that law enforcement officials will in some

cases reasonably but mistakenly conclude that probable cause is present, and we have

indicated that in such cases those officials – like other officials who act in ways they

reasonably believe to be lawful – should not be held personally liable."  Anderson, 483

U.S. at 641. (citing  Malley v. Briggs, 475 U.S. 335, 344-45 (1986)).

       Moreover, because qualified immunity may have the affect of relieving liability

against an officer; therefore, it is necessary to determine this question at the earliest

possible point in the proceedings.  See Anderson v. Creighton, 483 U.S. 635 (1987).  The

U.S. Supreme Court provides, "we have repeatedly stressed the importance of resolving

immunity questions at the earliest stage in the litigation."  Saucier v. Katz, 533 U.S. 194,

201 (2001).

       Qualified immunity exists if an objectively reasonable person would have

believed the conduct to be lawful at the time.  See Harlow v. Fitzgerald, 457 U.S. 800

(1982).  Qualified immunity protects those who pass the two-prong test explained in

Saucier v. Katz, 533 U.S. 194 (2001).  First, the reviewing court asks whether a

constitutional right has been violated.  "If no constitutional right would have been

violated…there is no necessity for further inquiries concerning qualified immunity."  Id.

at 201.  However, a constitutional violation does not automatically make qualified

immunity inapplicable.  Second, the Saucier test asks whether the constitutional right was clearly established at the time of the violation, so that the officer would have known that the conduct was unlawful.  Id. This second inquiry should be answered by analyzing the facts "in light of the specific context of the case, not as a broad proposition."  Id.

As to the first prong, no evidence supports Plaintiff's contention that Detective Withington violated his constitutional rights.  There is no dispute Plaintiff has a constitutional right to be free from unreasonable seizures under the Fourth Amendment. However, the evidence shows that Detective Withington did not violate Plaintiff's Fourth Amendment rights.  As discussed supra, any seizure of Plaintiff was reasonable and based on ample probable cause.

Even if this Court finds that there was a constitutional violation, Detective Withington's conduct is protected by qualified immunity under the second prong of the Saucier test.  As to the second prong, given the significant factors relied upon in determining probable cause existed to arrest Plaintiff, there is nothing in the record to support that Detective Withington could have known that at the time of Plaintiff's arrest that said arrest was unlawful.  Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  Malley, 475 U.S. at 341.  Nothing in the summary judgment record supports a conclusion that Detective Withington acted incompetently.  Quite the contrary, Detective Withington was far from incompetent in her conclusion that she had probable cause to arrest the Plaintiff.  As noted above, Detective Withington interviewed not only the alleged victim and listened to his first-hand account, but she also interviewed the alleged perpetrator who admitted that he had touched the alleged victim at some point.  She also collected additional

information regarding the incident from possible witnesses and attempted to gather additional information from the Plaintiff's employer. All these factors rise far above the minimum threshold of probable cause to arrest.

Given the grounds for finding probable cause at the time she arrested the Plaintiff, Detective Withington's conduct was objectively reasonable. Neither Detective Withington nor any other reasonable officer would have believed her conduct to be unlawful at the time. Accordingly, prong two of the <u>Saucier</u> test cannot be satisfied and Detective Withington's conduct is protected by qualified immunity.

In sum, Plaintiff's constitutional rights were not violated; however, even if the court finds differently, Detective Withington's conduct remains protected by qualified immunity, because her actions were reasonable.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, the Defendant, Erin T. Withington, moves that this Court grant summary judgment in her favor on all counts of Plaintiff's complaint against her, with prejudice.

**DEFENDANT REQUESTS AN ORAL ARGUMENT FOR THIS MOTION**

Respectfully submitted,

13

DEFENDANT ERIN WITHINGTON,
By her attorney:


/s/ Helen G. Litsas
Helen G. Litsas, BBO# 644848
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4023


CERTIFICATE OF SERVICE

I, Helen G. Litsas, hereby certify that on this date I served a copy of the foregoing documents upon: the plaintiff by filing electronically.


**10/31/05**          **/s/ Helen G. Litsas**

Date              Helen G. Litsas