UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No.  04-CV-11948

SEYED MOHSEN HOSSEINI-SEDEHY,

Plaintiff

v.

ERIN T. WITHINGTON
and CITY OF BOSTON

Defendants

**DEFENDANT DETECTIVE ERIN T. WITHINGTON'S LOCAL RULE
56.1 STATEMENT OF FACTS AND SUPPORTING EXHIBITS
IN  SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, the Defendant, Detective Erin T. Withington

("Detective Withington"), hereby moves this Honorable Court to dismiss this action by

summary judgment.  As grounds for this motion, Detective Withington submits the

attached Memorandum of Law and states the following:

1. Plaintiff, Seyed Mohsen Hosseini-Sedehy ("Plaintiff"), filed suit against Boston

   Police Detective Erin T. Withington, and the City of Boston on September 2,

   2004.  (Ex. 1, Pl.'s Complaint).

2. Plaintiff alleges that Detective Withington falsely arrested him without probable

   cause and violated his constitutional right to be free from unreasonable seizures.

   (Id.).

3. Detective Withington and the Boston Police Sexual Assault Unit had received

   several complaints from the alleged victim claiming that the Plaintiff had

committed an indecent assault and battery against him. (Ex. 2, Deposition of Erin T. Withington, at 15:6-16; 27:15-19; 28: 16; 31:7-8; 36: 1-3).

4.  In particular, Detective Withington interviewed John Doe on or about December 22, 2003.  (Id. at 15:6-16). During the interview, he stated that he was a Teamster who worked out of the Hynes Convention Center and other locations. (Id. at 15:6-16).

5.  He identified the Plaintiff as his boss and stated that on numerous occasions, when he bent over, the Plaintiff would walk by him so the front of the Plaintiff's groin would rub against his buttocks as he walked by.  (Id. at 15:6-16).

6.  He stated that at all times, both and he and the Plaintiff were fully clothed. (Id. at 15:6-16).

7.  John Doe also described another incident that occurred on a loading dock during which the Plaintiff allegedly grabbed him by the shoulders, ground his crotch against Doe's crotch and then kissed him on the cheek. (Id. at 15:17-22).

8.  Doe also alleged that he had complained about the Plaintiff's conduct with management, but that nothing had been done.  (Id. at 16:18-20).

9.  At his interview with Detective Withington, Doe was accompanied by a co-worker, a Mr. Smith[1], who advised Detective Withington that he was there to support Doe. (Id. at 15:6-7).

10. Additionally, Detective Withington also learned from Mr. Smith that the Plaintiff had also allegedly assaulted him. Pursuant to the Massachusetts rape shield statute, any alleged victims will be referred to by pseudonyms. (Id. at 17:5-11).

---

[1] Pursuant to the Massachusetts rape shield statute, any alleged victims will be referred to by pseudonyms.

11. Smith informed Detective Withington that the Plaintiff had touched his buttocks and kissed him on the cheek on numerous occasions. (Id. at 17:5-11). Smith, however, also indicated that he did not wish to bring any charges against the Plaintiff. (Id. at 17:5-11).

12. Detective Withington attempted to contact Doe' co-worker and foreman of the union to identify the Plaintiff's first name. (Id. at 18:9-19).

13. Once contacted, this individual refused to assist Detective Withington, but did refer her to a contact number in New Jersey for the Plaintiff's employer, GES Exposition Services ("GES"). (Id. at 18:9-19).

14. When Detective Withington contacted this New Jersey number, she was advised that no information would be provided to assist her. (Id. at 18:9-19; 20, 20-24).

15. While Detective Withington was able to confirm that the Plaintiff worked at the location alleged by Doe, she was unable to obtain his full first name or any telephone number to reach him. (Id. at 18:9-19; 20, 20-24).

16. She then contacted Doe a second time to explain her difficulty in obtaining additional information regarding her investigation, including contact information for the Plaintiff. (Id. at 18:20-24; 19, 1-9).

17. Subsequently, between the period of December 22, 2003 and January 7, 2004, Detective Withington was able to speak to another individual who ultimately provided her with the Plaintiff's cell phone number. (Id. at 18:9-19; 20, 20-24).

18. Due to a disabling injury, Detective Withington was on disability leave from approximately January 7, 2004 through approximately March 7, 2004. (Id. at 19:

11-13). During that time, Detective Withington had also learned that Doe had continued to contact her regarding his allegations. (Id. at 34: 13-19).

19. She also learned that the Plaintiff had returned her call. (Id. at 34:13-19). Detective Withington then returned their calls and left messages indicating that she was out on leave that she would contact them again upon her return to work. (Id. at 35: 1-5).

20. Following her return from disability leave, Detective Withington learned that a retired police officer, Jimmy Flynn, informed her that while he did not see the actual touching Doe was referring to, he did hear the Plaintiff and Doe yelling during an incident on the dock. (Id. at 41: 3-8).

21. Additionally, as part of her investigation, Detective Withington also interviewed the Plaintiff. (Id. at 43: 5-23).

22. During this interview, the Plaintiff himself corroborated part of Doe's story. (Id. at 43: 5-23).

23. Although the Plaintiff never actually admitted inappropriately touching Doe, he did advise Detective Withington that he did touch Doe once by the dock and that touching caused Doe to start to "freak out and yell." (Id. at 43: 5-23).

24. During her investigation, Doe continued to contact Detective Withington with additional information, including contact information for another individual she could speak with regarding the Plaintiff and also additional information that the Plaintiff had also touched and rubbed his arm while at work. (Id. at 29:4-19; 31:1-8).

25. He also apprised her of other interactions he had with the Plaintiff. (Id. at 29:4-19).

26. He also advised her that other individuals were complaining and that he was encouraging them to come forward. (Id. at 29:7-19; 31:1-8).

27. He also apprised her of other interactions he had with the Plaintiff. (Id. at 29:4-19).

28. Over a period of several months, the alleged victim continued to contact Withington and the Sexual Assault Unit to report the Plaintiff's continuing inappropriate conduct during the period of December 2003, (Id. at 9: 10) and March 2004, (Ex. 1).

29. On or about March 22, 2004, the alleged victim also advised Detective Withington that the Plaintiff's conduct had continued and that on that day, while Doe was at work, the Plaintiff had rubbed his arms and rubbed up against him. (Id. at 47: 10-21).

30. He also apprised her of other interactions he had with the Plaintiff. (Id. at 29:4-19).

31. Thus, on March 22, 2004, Detective Withington filed a criminal complaint against the Plaintiff on charges of indecent assault and battery against Doe and received an arrest warrant for the Plaintiff from the Boston Municipal Court. (Ex. 3, Criminal Complaint and Arrest Warrant).

32. The Plaintiff was then subsequently arrested on March 22, 2004 at the Hynes Convention Center.[2] (Ex. 3, Incident Report).

---

[2] The charges against the Plaintiff, however, were subsequently nolle prossed by the District Attorney's Office. (Ex. 4, District Attorney's Nolle Prossequi Motion).

Respectfully submitted,
DEFENDANT ERIN WITHINGTON,
By her attorney:


/s/ Helen G. Litsas
Helen G. Litsas, BBO# 644848
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4023


CERTIFICATE OF SERVICE

I, Helen G. Litsas, hereby certify that on this date I served a copy of the foregoing
documents upon: the plaintiff by filing electronically.


**10/31/05**          **/s/ Helen G. Litsas**

Date                    Helen G. Litsas

6