UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SEYED MOHSEN HOSSEINI-SEDEHY, ) | |
|     Plaintiff, ) | |
| v. ) | |
| ERIN T. WITHINGTON ) | Civil Action No. 04-cv-11948-RGS |
| and CITY OF BOSTON, ) | |
|     Defendants. ) | |

**SEYED MOHSEN HOSSEINI-SEDEHY'S OPPOSITION TO DEFENDANT ERIN T. WITHINGTON'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Seyed Mohsen Hosseini-Sedehy ("Mr. Hosseini") submits his opposition to the Detective Erin T. Withington's Motion for Summary Judgment. The Court should find Defendant Withington is not entitled to qualified immunity in this civil action. As reasons therefore, Mr. Hosseini states an officer of reasonable caution and prudence would not have believed Mr. Hosseini committed an arrestable offense in the circumstances known to Defendant Withington on March 22, 2004. Moreover, a reasonable officer would have known Defendant Withington's conduct on March 22, 2004 violated a clearly established constitutional right of Mr. Hosseini. In further support, Mr. Hosseini submits the following:

***MR. HOSSEINI'S RESPONSE TO DEFENDANT WITHINGTON'S LOCAL RULE 56.1 CONCISE STATEMENT OF FACTS***

    1.     Mr. Hosseini admits he filed the Complaint on September 7, 2004.

    2.     Admitted.

    3.     Denied. Ex. 1, original Boston Police Incident Report dated March 22, 2004, by Detective Erin T. Schroeder.

    4.     Mr. Hosseini admits Defendant Withington interviewed Joseph Bavis during which Bavis told her he was a Teamster who had worked at the Hynes Convention Center.

5. Mr. Hosseini admits Bavis advised Defendant Withington that Mr. Hosseini was his supervisor at work, but denies the remaining allegations contained in this paragraph. Ex. 1, original Boston Police Incident Report dated March 22, 2004, by Detective Erin T. Schroeder.

6. Admitted subject to the response in paragraph no. 5.

7. Denied. Bavis only made one allegation of indecent assault and battery against Mr. Hosseini and did not allege he was kissed. Ex. 1, original Boston Police Incident Report dated March 22, 2004, by Detective Erin T. Schroeder.

8. Denied. Mr. Hosseini admits after this civil action was filed Defendant Withington claimed Bavis reported his allegation to management. Ex. 1, original Boston Police Incident Report dated March 22, 2004, by Detective Erin T. Schroeder.

9. Admitted Joseph Perry was with Bavis during the December 22, 2003 interview.

10. Mr. Hosseini admits Joseph Perry told Defendant Withington on December 22, 2003 that he was either kissed by Mr. Hosseini or touched on the buttocks by Mr. Hosseini. Mr. Hosseini denies the remaining allegations contained in this paragraph. Ex. 2, Boston Police Sexual Assault Unit Follow Up Investigation Report, dated October 7, 2004, by Detective Erin Schroeder.

11. Mr. Hosseini admits Joseph Perry told Defendant Withington on December 22, 2003 that he did not want to pursue criminal charges against Mr. Hosseini, but denies the remaining allegations contained in this paragraph. Ex. 2, Boston Police Sexual Assault Unit Follow Up Investigation Report, dated October 7, 2004, by Detective Erin Schroeder.

12.    Mr. Hosseini admits Defendant Withington contacted John Perry, a Teamster official, in order to identify Mr. Hosseini after interviewing Bavis on December 22, 2003.

13.    Mr. Hosseini admits John Perry assisted Defendant Withington by providing her with the telephone number of GES Exposition Services, Inc., but denies the remaining allegations contained in this paragraph.

14.    Mr. Hosseini admits Defendant Withington contacted GES Exposition Services, Inc., and she was unsuccessful in obtaining information on Mr. Hosseini, but denies the remaining allegations contained in this paragraph. Ex. 3, Deposition Transcript of Erin T. Withington, dated March 31, 2005, pp. 20-21 (hereinafter "Withington, p. __").

15.    Denied.  Ex. 4, Withington, p. 23.

16.    Admitted.

17.    Admitted.

18.    Mr. Hosseini admits Defendant Withington was on disability leave from work from approximately January 7, 2004 until March 4, 2004 and that Bavis continued to call her to inquire about the status of his complaint. Ex. 5, Withington, p. 201.

19.    Admitted.

20.    Mr. Hosseini admits that Defendant Withington spoke to Jimmy Flynn following her return from disability leave, and Mr. Flynn denied Bavis's claim that Mr. Flynn was a witness to Bavis's allegations.  Mr. Hosseini also admits Mr. Flynn told Defendant Withington Mr. Hosseini and Bavis were arguing with each other at the loading dock. Mr. Hosseini denies the remaining allegations contained in this paragraph. Ex. 6, Withington, pp. 40-41.

21.    Admitted.

22.    Mr. Hosseini admits he advised Defendant Withington he and Bavis had a work dispute in 2002, but denies the remaining allegations contained in this paragraph. Ex. 7. Deposition Transcript of Mohsen Hosseini, dated October 14, 2005, pp. 44-45 (hereinafter "Hosseini, p. __").

23.    Admitted.

24.    Mr. Hosseini admits that Defendant Withington received Mr. Hosseini's full name, address and telephone number from a person in December 2003 or January 2004 and received from Bavis allegations of two incidences of simple assault and battery alleged to have occurred on February 29, 2004 and March 22, 2004.  Mr. Hosseini denies the remaining allegations contained in this paragraph. Ex. 1, original Boston Police Incident Report dated March 22, 2004, by Detective Erin T. Schroeder; Ex. 3, Withington, p. 19.

25.    Denied. See ¶ 24.

26.    Denied. Ex. 1, original Boston Police Incident Report dated March 22, 2004, by Detective Erin T. Schroeder.

27.    This paragraph merely repeats the assertions contained in paragraph 25.  These allegations are again denied. See ¶ 25.

28.    Denied. Ex. 1, original Boston Police Incident Report dated March 22, 2004, by Detective Erin T. Schroeder.

29.    Mr. Hosseini admits Bavis called Defendant Withington on March 22, 2004 to allege that Mr. Hosseini touched his arm.  Mr. Hosseini denies the remaining allegations contained in this paragraph. Ex. 1, original Boston Police Incident Report dated March 22, 2004, by Detective Erin T. Schroeder.

30.     This paragraph merely repeats the assertions contained in paragraph 25. These allegations are again denied. See ¶ 25.

31.     Admitted.

32.     Admitted.

## MR. HOSSEINI'S LOCAL RULE 56.1 CONCISE STATEMENT OF MATERIAL FACTS

1.     Mr. Hosseini is a forty-four year old father of a seven-year-old son whose wife is in the United States Navy currently assigned in North Carolina. Ex. 8, Hosseini, pp. 7, 10, 12, and 17.

2.     Mr. Hosseini received his B.S. in 1984 and M.S. in applied math in 1986, both conferred by the University of Iowa. Ex. 8, Hosseini, pp. 7-8.

3.     Mr. Hosseini has worked for GES Exposition Services, Inc. ("GES") since 1989. GES is in the business of setting up trade shows and conventions. Mr. Hosseini is a senior operations manager for GES. Ex. 8, Hosseini, pp. 9, 10 and 16.

4.     GES used laborers from the Teamster union to set up trade shows and conventions. When Joseph Bavis[1] worked for GES, Mr. Hosseini was his supervisor. Ex. 8, Hosseini, pp. 13-14.

5.     Sometime near the beginning of September 2002, Mr. Hosseini caught Bavis not working at a loading dock. When confronted by Mr. Hosseini, Bavis became angry and started to yell. Mr. Hosseini calmed Bavis down by placing his hands on Bavis's shoulders. Ex. 7, Hosseini, pp. 44-45.

6.     Shortly after Bavis's argument with Mr. Hosseini in 2002, Bavis alleged he was disabled from work for GES. Ex. 7, Hosseini, p. 45.

---

[1] Bavis is referred to as John Doe in the Defendant's Summary Judgment Motion.

7.      Joseph Perry[2] worked with Bavis as a Teamster who periodically performed labor for GES. In December 2003, Mr. Hosseini caught Joseph Perry acting inappropriately during work hours. Joseph Perry retaliated against Mr. Hosseini by falsely accusing him of a sexual assault. After a GES investigation, Joseph Perry was suspended for making a false sexual assault claim against Mr. Hosseini. Ex. 9, Hosseini, pp. 30-37.

8.      On December 22, 2003, Bavis met with Defendant Erin Withington at her office. Joseph Perry accompanied Bavis to Defendant Withington's office. Ex. 10, Withington, pp. 13-14.

9.      On December 22, 2003, Bavis alleged Mr. Hosseini rubbed his groin against Bavis once in the beginning of 2003. Bavis did not explain the reason for waiting almost one year to report this alleged crime. Bavis reported to Defendant Withington that he threatened Mr. Hosseini with bodily injury if Mr. Hosseini touched him again. Ex. 1, original Boston Police Incident Report dated March 22, 2004, by Detective Erin T. Schroeder. Ex. 10, Withington, p. 15.

10.     Bavis claimed that other persons would corroborate his allegations, but refused to provide Defendant Withington with the names of these witnesses. Ex. 11, Withington, pp. 162-164.

11.     Mr. Bavis's friend and co-worker, Joseph Perry, was present during Bavis's interview on December 22, 2003. Joseph Perry also alleged Mr. Hosseini inappropriately touched him, but Joseph Perry claimed that he could not remember if Mr. Hosseini touched his buttocks or kissed his cheek. Ex. 2, Boston Police Sexual Assault Unit, Follow Up Investigation Report, by Detective Erin Schroeder, dated October 7, 2004.

---

[2] Joseph Perry is referred to as Mr. Smith in the Defendant's Summary Judgment Motion.

12.    In her twelve years as a police officer Defendant Withington's experience led her to believe that approximately half of the complaining witnesses that she had dealt with were lying to her. Ex. 12, Withington, p. 69.

13.    Defendant Withington thought Bavis's allegations were strange. Ex. 13, Withington, p. 145.  She was also concerned that Bavis could not provide her with an exact date for the alleged offense. Ex. 14, Withington, p. 86.

14.    After speaking with Bavis, Withington did not intend to arrest or even seek a criminal charge against Mr. Hosseini.  Rather, she intended only to interview Mr. Hosseini and present the case to the District Attorney to let him decide what to do with the case. Ex. 13, Withington, p. 142.

15.    The only two names Bavis was willing to provide Defendant Withington in connection with his allegations were those of John Perry and Mr. Hosseini. Ex. 13, Withington, p. 144.

16.    Defendant Withington called John Perry, the President of the Teamster union, only to obtain Mr. Hosseini's full name and a telephone number in order to contact Mr. Hosseini. Ex. 3, Withington, p. 19; Ex. 15, Hosseini, p. 61.

17.    John Perry gave Defendant Withington the telephone number for GES. Ex. 13, Withington, pp. 19-20.  After providing Defendant Withington with this assistance, John Perry advised Defendant Withington "he didn't want to get in the bullshit of Bavis." Ex. 16, Withington, p. 185.

18.    Defendant Withington contacted GES to get Mr. Hosseini's telephone number, but did not bother to discuss the allegations with GES. Ex. 3, Withington, p. 20.

19.    Bavis called Defendant Withington about 10 times between December 22, 2003 and January 7, 2004.  Ex. 17, Withington, p. 28;  Ex. 3, Withington, p. 19.

20.    Defendant Withington believed the number of calls from Bavis to her between December 22, 2003 and January 7, 2004 was unusual based upon Bavis's allegations.  Ex. 18, Withington, p. 33.

21.    Defendant Withington broke her ankle and was on disability leave from January 7, 2004 until approximately March 4, 2004.  Ex. 3, Withington, p. 19; Ex. 5, Withington, p. 201.

22.    Bavis called the Sexual Assault Unit for Defendant Withington approximately twenty times during her 57-day disability leave about his complaint.  Ex. 6, Withington, p. 38. Bavis called the Sexual Assault Unit so often while Defendant Withington was on disability leave, Bavis's "name became very well known at [the Sexual Assault Unit]"  Ex. 17, Withington, p. 27.

23.    In February 2004 Bavis returned to work after an absence of approximately one and half years.  Ex. 19, Hosseini, pp. 69-70.

24.    On March 4, 2004, either the first day or second day back from her disability leave, Mr. Hosseini offered to meet with Defendant Withington.  Ex. 5, Withington, pp. 200-201.

25.    Mr. Hosseini explained to Defendant Withington that he believed the complaining witness was a Teamster by the name of Joseph Perry.  Mr. Hosseini explained Joseph Perry had motive to lie because of work-related issues.  Ex. 7, Withington, pp. 42-43.

26.    During her interview of Mr. Hosseini, Defendant Withington never advised Mr. Hosseini about Bavis's allegations.  Ex. 20, Hosseini, p. 47; Ex. 21, Sexual Assault Unit-Case Update by Detective Erin Schroeder.

27.     When Defendant Withington asked Mr. Hosseini if he ever had any other problems with other workers, Mr. Hosseini explained that he and Bavis got into an argument sometime around September 2002. Mr. Hosseini explained he grabbed Bavis's shoulders during the argument. Ex. 21, Sexual Assault Unit-Case Update by Detective Erin Schroeder.

28.     Although she had a tape recorder available, Defendant Withington chose not to audio tape her interview with Mr. Hosseini. Ex. 22, Withington, p. 203.

29.     After speaking with Mr. Hosseini, Defendant Withington concluded that it was not appropriate to arrest Mr. Hosseini on Bavis's allegation. Ex. 23, Hosseini, p. 147.

30.     Defendant Withington told Mr. Hosseini that she was referring the matter to the District Attorney's office and he should not worry about being charged with a crime arising from this matter. Ex. 20, Hosseini, pp. 48-49.

31.     Either just before or immediately after Mr. Hosseini's interview, Defendant Withington contacted Jimmy Flynn, who was a GES employee. Bavis told Defendant Withington that Mr. Flynn, a former New York City police officer, was an eyewitness to the sexual assault on the loading dock. Ex. 6, Withington, p. 40-41.

32.     Mr. Flynn denied Bavis's claim telling Defendant Withington that he did not witness Mr. Hosseini sexually assault Bavis. Mr. Flynn also warned Defendant Withington that Bavis was a loudmouth. Ex. 6, Withington, p. 41.

33.     In contrast to his comments about Bavis, Mr. Flynn had nothing bad to say about Mr. Hosseini. Ex. 24, Withington, p. 224.

34.     After speaking with Mr. Flynn and Mr. Hosseini, Defendant Withington felt her investigation into Bavis's complaint was concluded. Ex. 25, Withington, pp. 150-151.

35.     Defendant Withington never sought to interview "fresh complaint" witnesses, which are witnesses used to corroborate a sexual assault victim's allegations, because Bavis refused to provide her the names of any fresh complaint witnesses. Ex. 11, Withington, pp. 162-165; Ex. 1, Withington p. 166.

36.     After Defendant Withington made the determination that she would not arrest Mr. Hosseini on Bavis's allegation, Bavis called daily complaining to Defendant Withington. On some days, Bavis called her two or three times. Ex. 26, Withington, pp. 45-46.

37.     Defendant Withington explained to Bavis that she referred the matter to the District Attorney's Office. Ex. 26, Withington, p. 47.

38.     Bavis called so often Defendant Withington started to receive pressure from people in her office to do something about him. Ex. 26, Withington, p. 46.

39.     Bavis's telephone calls were also annoying Defendant Withington. Ex. 25, Withington, p. 151.

40.     Despite Bavis's repeated telephone calls between March 4, 2004 and March 22, 2004, Defendant Withington refused to investigate Bavis's allegations further because Bavis had taken up too much of her time. Ex. 26, Withington, pp. 48-49; Ex. 27, Withington, pp. 158-159.

41.     In the five days preceding March 22, 2004, Bavis called so many times, Defendant Withington didn't bother to return all of his calls. Ex. 26, Withington, p. 48.

42.     On March 22, 2004, Bavis's friend, Joseph Perry, tried to return to work for GES for the first time since Joseph Perry made a false sexual assault claim against Mr. Hosseini. Steven Casterline, another GES supervisor, refused to permit Joseph Perry back to work. Ex. 9, Hosseini, pp. 31-32.

43.     On March 22, 2004 after Joseph Perry was sent away from the GES workplace, Bavis called Defendant Withington alleging that Mr. Hosseini rubbed his arms. Bavis demanded to know what Defendant Withington was going to do about his complaints. Ex. 28, Withington, pp. 137-138.

44.     Before seeking the arrest warrant for Mr. Hosseini's arrest, Defendant Withington confirmed that Mr. Hosseini had never been arrested. Ex. 29, Withington, pp. 50-51.

45.     Defendant Withington was not concerned for Bavis's safety because Bavis was bigger than Mr. Hosseini and the only threats made to cause physical harm came from Bavis and were directed to Mr. Hosseini. Ex. 1, Withington, pp. 167-168.

46.     Although normally, Defendant Withington would satisfy herself that a complaining witness's allegations were truthful before arresting another citizen, she decided to seek an arrest warrant for Mr. Hosseini for the Bavis's alleged stale indecent assault and battery claim "based solely on the persistent phone calls of Bavis." Ex. 25, Withington, p. 152; Ex. 30, Affidavit of Timothy Pomerole, Document No. 457.

47.     In an effort to obtain the arrest warrant for Mr. Hosseini, Defendant Withington testified under oath before the Boston Municipal Court that the date of the alleged sexual assault was December 22, 2003. Ex. 31, Application for Complaint.

48.     Defendant Withington testified to the date of the alleged offense on the application for an arrest warrant, knowing that it was false. Ex. 31, Withington, p. 175.

49.     Defendant Withington arrested Mr. Hosseini in front of Teamster laborers during work hours. Ex. 32, Withington, pp. 180-181.

50.     When she arrested Mr. Hosseini, Defendant Withington never advised him that Bavis had made sexual assault allegations against him. Ex. 33, Withington, p. 210.

51.    Defendant Withington neither bothered to interview Mr. Hosseini about Bavis's recent allegation, nor did she bother to conduct any further investigation into Bavis's allegations. Ex. 33, Withington, p. 153.

52.    Defendant Withington charged Mr. Hosseini with a crime, which required him to register with the state as a sex offender, if convicted. Ex. 32, Withington, p. 179.

53.    The Suffolk County District Attorney's Office filed a nolle prosequi concerning the criminal complaint against Mr. Hosseini on June 11, 2004. Ex. 30, Affidavit of Timothy Pomerole, nolle prosequi.

54.    Defendant Withington received a civil summons for this civil action on September 29, 2004. Ex. 24, Withington, p. 223.

55.    Defendant Withington was deposed under oath for this civil action on March 31, 2005. Ex. 1.

56.    At her deposition, Defendant Withington defended her decision not to conduct an investigation into the allegations Bavis made to her after the March 4, 2004 interview with Mr. Hosseini because she claimed that the District Attorney had already been provided with her police reports, which were marked as deposition exhibit nos. 22 and 23. Ex. 2, Boston Police Sexual Assault Unit Follow Up Investigation Report; Ex. 34, Sexual Assault Unit-Case Update; Ex. 26, Withington, pp. 44-45; Ex. 27, Withington, pp. 158-159.

57.    The deposition exhibit nos. 22 and 23 had the date of October 7, 2004 on them, a date several months after the criminal case was dismissed and eight days after being served with a copy of the Complaint for this civil action. Ex. 2, Boston Police Sexual Assault Unit Follow up Investigation Report; Ex. 34, Sexual Assault Unit-Case Update; Ex. 30, Affidavit of Timothy Pomerole, nolle prosequi; Ex. 24, Withington, p. 223.

-12-

58.    Contrary to Defendant Withington's sworn deposition testimony, the District Attorney was never provided with Defendant Withington's reports, deposition exhibit nos. 22 and 23.  Ex. 2, Withington, p. 193; Ex. 27, Withington pp. 158-159; Ex. 30, Affidavit of Timothy Pomerole, paragraph 7.

59.    Contrary to her initial police report and her sworn application for a complaint both generated on March 22, 2004 that claim Bavis made only one allegation of a sexual assault to her, Defendant Withington testified at her deposition that Bavis told her during his December 22, 2003 interview that Mr. Hosseini often sexually assaulted him at work.  Ex. 1, Boston Police Incident Report; Ex. 31, Application for Complaint; Ex. 10, Withington, pp. 14-15.

60.    Contrary to her initial police report and her sworn application for an arrest warrant both generated on March 22, 2004 that claim Bavis made only one allegation of a sexual assault to her, Defendant Withington testified at her deposition Bavis called at least twice after March 4, 2004 and before March 22, 2004, claiming he was recently sexually assaulted by Mr. Hosseini.  Ex. 1, Boston Police Incident Report; Ex. 31, Application for Complaint; Ex. 25, Withington, p. 153.

61.    Contrary to her initial police report and sworn application of an arrest warrant, which asserted that Bavis told Defendant Withington the sole alleged sexual assault occurred in 2003, Defendant Withington testified at her deposition that Bavis told her the alleged sexual assault may have occurred in 2002 in order to conform her investigation to the Bavis's last day of work with GES before February 2004.  Ex. 1, Boston Police Incident Report; Ex. 31, Application for Complaint; Ex. 19, Hosseini,  pp. 70, 72; Ex. 10, Withington,  p. 16.

***ARGUMENTS***

"In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, the court must decide, [t]aken in the light most favorable to the party asserting the injury, [if] the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. If so, then it must decide whether the "right is clearly established [so that] it would be clear to a reasonable officer that [her] conduct was unlawful in the situation [she] confronted." *Id.* "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The evidence in this matter proves Defendant Withington either is plainly incompetent or, more likely, knowingly violated Mr. Hosseini's constitutional right to be free from an unreasonable seizure.

A.    Defendant Withington Violated Mr. Hosseini's Constitutional Right to be Free from an Unreasonable Seizure When She Arrested Him Without Probable Cause.

"The Fourth Amendment guaranty against unreasonable seizures of the person requires that arrests be based on probable cause." *Alexis v. McDonald's Restaurants of Massachusetts, Inc.*, 67 F.3d 341, 349 (1st Cir. 1995) (footnote omitted). "Probable cause analysis requires inquiry into the facts and circumstances within the arresting officer's knowledge at the time of the arrest to determine if a person of 'reasonable caution and prudence' would have believed that the defendant committed a crime." *Forest v. Pawtucket Police Department*, 377 F.3d 52, 56 (1st Cir. 2004) quoting *Floyd v. Farrell*, 765 F.2d 1, 5 (1st Cir. 1985). "[W]hether or not probable cause exists in any given case invariably depends on the particular facts and circumstances of that case . . . ." *B.C.R. Transport Co. v. Fontaine*, 727 F.2d 7, 10 (1st Cir. 1984). "[T]he primary inquiry in [the] case is whether there is any evidence that the [officer] acted unreasonably when

[she] determined that [complainant's] accusation was credible, in light of all the circumstances known at the time." *Forest v. Pawtucket Police Department*, 377 F.3d 52, 57 (1st Cir. 2004).

On December 22, 2003, Bavis, a local Teamster, complained to Defendant Withington that his supervisor, Mr. Hosseini, rubbed against his clothed groin against Bavis during work. Bavis claimed approximately one year had passed since the alleged indecent touching. He apparently could not remember the exact date of this alleged sexual transgression nor explain why he waited about one year to bring the alleged offense to the attention of the police. Moreover, Bavis did not mention what prompted him to journey to the Boston Police Sexual Assault Unit on December 22, 2003 to lodge his complaint. Defendant Withington pressed Bavis for witnesses, including fresh complaint witnesses, to no avail. Although Bavis claimed many Teamsters had incriminating evidence against their supervisor, Bavis refused to divulge their names.

A second male Teamster, Joseph Perry, accompanied the forty-eight-year old Bavis to the Sexual Assault Unit to speak with Defendant Withington. Joseph Perry complained that Mr. Hosseini had either touched his buttocks or kissed him on the cheek. Apparently, Joseph Perry was unable to explain his inability to remember how he was allegedly victimized by Mr. Hosseini. Both Bavis and Joseph Perry told Defendant Withington that they threatened Mr. Hosseini with bodily harm if he ever touched them inappropriately again.

Defendant Withington's experience as a twelve-year veteran police officer in Boston taught her that approximately one half of all people that complained to her of being a victim were lying. She thought Bavis's claims were strange and already decided at the conclusion of Bavis's interview that she would neither arrest Mr. Hosseini nor seek a complaint against him based upon Bavis's allegation. Rather, Defendant Withington was content to merely interview

Mr. Hosseini to conclude the investigation.  The quality of evidence presented against Mr. Hosseini to Defendant Withington went from bad on December 23, 2003 to worse over the course of the next three months.

While trying to obtain contact information for Mr. Hosseini, Defendant Withington stumbled across further evidence that undermined Bavis's already strained credibility.  After providing Defendant Withington with Mr. Hosseini's employer's telephone number, Bavis's union president, John Perry, told Defendant Withington that he did not want to get involved in Bavis's "bullshit."

Due to Mr. Hosseini's family vacation back to his native Iran and Defendant Withington's two-month disability leave, Defendant Withington was unable to interview Mr. Hosseini until the beginning of March 2004.  Although Bavis allegedly waited approximately one year to bring his complaint to the police, over the two and a half month span between his interview and Defendant Withington's return to work from her injury, Bavis called Defendant Withington several dozen times to find out what Defendant Withington was doing about his complaint.  Bavis harassed the members of the Sexual Assault Unit so much during Defendant Withington's disability leave, Defendant Withington started to receive pressure from her supervisor to do something about Bavis.

As soon as Defendant Withington returned to work, Mr. Hosseini met her for an interview.  Mr. Hosseini, under the mistaken impression that the complainant was Joseph Perry, explained that Joseph Perry was a problem Teamster with a motive to fabricate a work-related grievance.  Defendant Withington did not even bother to advise Mr. Hosseini that he was speaking about the wrong disgruntled Teamster.  Nevertheless, when she asked if Mr. Hosseini

ever had a problem with other Teamsters, Mr. Hosseini described an isolated incident with Bavis that occurred sometime around September 2002.

Mr. Hosseini explained when he caught Bavis engaging in work misconduct Bavis created a potentially violent situation by yelling and screaming. Mr. Hosseini told Defendant Withington he tried to defuse the explosive situation by placing his hands on Bavis's shoulders and speaking rationally to him. At the conclusion of the interview, Defendant Withington told Mr. Hosseini not to worry about her investigation, which she intended to refer to the District Attorney. Defendant Withington had no intention of arresting Mr. Hosseini or seeking a criminal complaint against Mr. Hosseini after the interview.

At about the same time Defendant Withington interviewed Mr. Hosseini, Bavis finally provided her with the name of an alleged eyewitness to his allegation. Defendant Withington interviewed this alleged eyewitness, Jimmy Flynn, a former New York City police officer. Mr. Flynn refuted Bavis's claim that he witnessed a sexual assault. In fact, Mr. Flynn confirmed Mr. Hosseini's assertion that he and Bavis had a verbal altercation in 2002. Mr. Flynn also warned Defendant Withington that Bavis was a loudmouth.

After speaking with Mr. Hosseini and Mr. Flynn, Defendant Withington advised Bavis that she would not arrest Mr. Hosseini or seek a criminal complaint against Mr. Hosseini but rather simply pass Bavis's allegations on to the District Attorney. Bavis became upset with Defendant Withington's inaction and harassed her with telephone calls, sometimes two or three a day. At some point, in an effort to spur action, Bavis alleged Mr. Hosseini rubbed his shoulders at work on February 29, 2004. The calls annoyed Defendant Withington. She refused to further investigate Bavis's claims because she felt she already had spent too much time on Bavis's claims. Bavis's pressure on Defendant Withington intensified on March 22, 2004 after Bavis's

Case 1:04-cv-11948-RGS    Document 34    Filed 11/14/2005    Page 18 of 20

friend, Joseph Perry, was told he was suspended from work by GES. Bavis called Defendant Withington and claimed Mr. Hosseini had rubbed his shoulders that morning. Bavis demanded action against Mr. Hosseini.

Defendant Withington buckled under Bavis's pressure and sought an arrest warrant for Mr. Hosseini based solely on his persistent telephone calls. In order to obtain the arrest warrant, Defendant Withington intentionally misrepresented under oath the date of offense of the alleged indecent assault and battery to be December 22, 2003, only three months before the hearing, instead of Bavis's actual allegation that was allegedly 15 months old, in order to obtain the arrest warrant. After arresting Mr. Hosseini Defendant Withington did not bother to interview him on Bavis's recent allegations of assault and battery because she did not believe Bavis.

After almost three months, the District Attorney filed a nolle prosequi concerning the criminal complaint. After Defendant Withington was served with the complaint for this civil action, she created her narrative reports concerning her investigation into Bavis's allegation. At her deposition in this matter, Defendant Withington tried to make her actions, which resulted in the arrest of an innocent man, seem more reasonable. Contrary to her sworn statement to the clerk magistrate at the Boston Municipal Court, which alleged a single complaint of indecent assault and battery on one occasion in 2003, Defendant Withington testified that Bavis alleged to her that he was sexually assaulted repeatedly right up to the date of arrest. With the knowledge that Bavis was not even working for GES from Fall 2002 until February 2004, Defendant Withington testified, again contrary to her sworn statement to the clerk magistrate, that Bavis initially told her the alleged indecent assault and battery occurred in 2002 or 2003. Finally, Defendant Withington testified the reason she did not conduct further investigation into Bavis's allegations, especially the continuous sexual assaults in March was because she had sent her

follow up investigation report and case update report to the District Attorney for review.  This testimony also appears to be false because the District Attorney never received these reports, either before or after the arrest of Mr. Hosseini.

Based upon the facts and circumstances within Defendant Withington's knowledge at the time of Mr. Hosseini's arrest, a person of reasonable caution and prudence would not have believed that Mr. Hosseini committed a crime.  Bavis gave an incredible story to Defendant Withington on December 22, 2003 and over the course of the investigation the case only deteriorated.  Bavis made a stale complaint of an alleged crime occurring on an uncertain date to Defendant Withington without any explanation at all for the long reporting delay.  Moreover, Defendant Withington recognized that Bavis was the party that posed a physical threat to Mr. Hosseini and not the other way around.  Bavis also refused to name any witnesses initially.  When he finally claimed an eyewitness existed, the alleged witness impeached Bavis's credibility, not supported it.  Finally, Bavis's own union president succinctly summed up the demerits of Bavis's complaint in the vernacular.   In light of all the circumstances known on March 22, 2004, the evidence clearly shows Defendant Withington acted unreasonably when she claims to have determined that Bavis's accusation was credible.   Therefore, Defendant Withington violated Mr. Hosseini's right to be free from an unreasonable seizure.

> B.     The Right to be Free From Seizure Without Probable Cause Was Clearly
> Established Before Mr. Hosseini's Arrest so That a Reasonable Officer Would
> Have Known That Arresting Mr. Hosseini Was Unlawful.

The Supreme Court has held since 1964, "[t]he Fourth Amendment guaranty against unreasonable seizures of the person requires that arrests be based on probable cause. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see also Hall v. Ochs*, 817 F.2d 920, 925 (1st Cir. 1987) ("[t]he right to be free from unreasonable seizure of the person was . . . well established by 1980");

*Lewis v. Kendrick*, 944 F.2d 949, 952 (1st Cir. 1991) (upholding jury verdict against officers where objective probable cause lacking). The right to be free from arrests not supported by probable cause was clearly established in March 2004 so that it was clear to a reasonable officer that Defendant Withington's conduct was unlawful in the situation she confronted on March 22, 2004.

### CONCLUSION

For the reasons given, the Court should deny Defendant Withington claim that she is entitled to qualified immunity because, in viewing the evidence in the light most favorable to Mr. Hosseini, the Court could find that Defendant Withington either was plainly incompetent or knowingly violated the constitutional right of Mr. Hosseini when she arrested him without probable cause.

REQUEST FOR ORAL ARGUMENT

Respectfully submitted,
Seyed Mohsen Hosseini-Sedehy
By his attorneys,

___/s/ Gerard A. Butler, Jr._____
Christopher A. Duggan, BBO # 544150
Gerard A. Butler, Jr., BBO # 557176
Smith & Duggan LLP
Lincoln North, 55 Old Bedford Road
Lincoln, MA 01773-1125
(617) 228-4400

Dated: November 14, 2005