# EXHIBIT 13

```
 1    Volume I                          Pages:     1 - 242

 2                                   Exhibits: 1 - 27

 3               UNITED STATES DISTRICT COURT

 4                DISTRICT OF MASSACHUSETTS

 5                   No. 04-CV-11948-RGS

 6    SEYED MOHSEN HOSSEINI-SEDEHY,

 7              Plaintiff

 8    vs.

 9    ERIN T. WITHINGTON and the CITY

10    OF BOSTON,

11              Defendants

12

13         DEPOSITION OF ERIN T. WITHINGTON

14              Thursday, March 31, 2005

15                10:00 a.m. - 4:32 p.m.

16                  SMITH & DUGGAN LLP

17                55 Old Bedford Road

18         Lincoln, Massachusetts  01773-1125

19

20

21

22              FARMER ARSENAULT BROCK LLC

23         617.790.4404    FAX   617.728.4403

24         Reporter:  Cynthia C. Henderson/RPR
```

Erin T. Withington - March 31, 2005

142

1    Q. But you considered Perry's claims in the
2  course of your investigation, did you not?
3         MS. AMBARIK: Objection. You can
4  answer.
5    A. No. As far as arresting Mr. Hosseini, no.
6    Q. As far as making any determination as to
7  the course of your investigation into Bavis's
8  allegations, did you consider the information Perry
9  gave you in any way, shape or form?
10    A. I heard what he said. I documented it.
11  There was supposedly other people that wanted to
12  speak with me, and I never heard from them, so it
13  was part of the investigation, but I didn't weigh it
14  very heavily either way.
15    Q. After speaking with Bavis and Perry on the
16  22nd of December, 2003, what was your plan to
17  investigate these allegations?
18    A. I attempted to speak with Mr. Hosseini and
19  then, as I did, send it up to the District
20  Attorney's office and let them make a determination
21  to bring it into court.
22    Q. And other than your intention to speak with
23  Mr. Hosseini, did you intend to do any further
24  investigation with Bavis's allegations on December

143

1  22nd?
2    A. Yes.
3    Q. What did you intend to do?
4    A. Speak with the other people that they had
5  mentioned during that -- speak with other people
6  that worked with the two of them together.
7    Q. Okay. What names did you get from Bavis
8  and Perry on December 22nd of 2003 other than Mr.
9  Hosseini?
10    A. John Perry and a phone number for GES.
11    Q. And what about the names of all these
12  people you are saying that they mentioned to you?
13    A. They didn't give me the names. They just
14  referred to other people want to come forward, and I
15  think maybe there was a first name thrown out, but
16  there was no name and phone number or anything like
17  that given to me.
18    Q. Did you ask for names?
19    A. Yes.
20    Q. And what was the response you got from
21  these two people?
22    A. Let me see if this is something that they
23  are comfortable with, and I said, okay, if they
24  would like to come forward, gave them my name and

144

1  number and have them call me. You can't report for
2  someone else, I explained to them, and if they want
3  to be part of this complaint, they can also start
4  their own investigations and everybody would have
5  their own file.
6    Q. So as of that first interview, December 22,
7  2003, the only names that you had were John Perry,
8  Mohsen Hosseini and GES?
9    A. Yes.
10    Q. And your plan on that day was to speak with
11  John Perry and Mohsen Hosseini; correct?
12    A. Yes.
13    Q. Did you have any other plan or did you have
14  any intent to conduct any other investigation on
15  Bavis's allegations on that day after you spoke with
16  Bavis and Perry after they left your office?
17    A. On that specific day?
18    Q. Yes.
19    A. No.
20    Q. And did you decide to seek an arrest
21  warrant for Mr. Hosseini on that day, December 22nd?
22    A. No.
23    Q. Why not?
24    A. Because I wanted to speak with

145

1  Mr. Hosseini regarding the allegations, and since it
2  was two adult males that worked together, that I
3  figured let me speak to Mr. Hosseini, which is what
4  I do in all my cases, get his side of the story and
5  see what transpired from there, and explained to
6  both of them that this would probably make its way
7  through court and they could go to court.
8    Q. And the fact that they were two adult males
9  that worked with each other, that was significant in
10  the course of your investigation; correct?
11    A. Considering they had no relationship, they
12  weren't involved intimately, there was no real
13  relationship there, you know. It just seemed kind
14  of strange to me that it was making its way through
15  Sexual Assault.
16    Q. This was an unusual complaint that
17  Mr. Bavis was making from a 48-year-old Teamster;
18  correct?
19    A. It was a little strange, yes.
20    Q. And the fact that this guy was coming in as
21  a 48-year-old Teamster complaining that his boss
22  touched him on the buttocks and sexually assaulted
23  him in the way he mentioned, that was unusual, was
24  it not?