# EXHIBIT 27

```
 1  Volume I                          Pages:    1 - 242
 2                                    Exhibits: 1 - 27
 3            UNITED STATES DISTRICT COURT
 4             DISTRICT OF MASSACHUSETTS
 5               No. 04-CV-11948-RGS
 6  SEYED MOHSEN HOSSEINI-SEDEHY,
 7        Plaintiff
 8  vs.
 9  ERIN T. WITHINGTON and the CITY
10  OF BOSTON,
11        Defendants
12
13         DEPOSITION OF ERIN T. WITHINGTON
14            Thursday, March 31, 2005
15             10:00 a.m. - 4:32 p.m.
16               SMITH & DUGGAN LLP
17             55 Old Bedford Road
18        Lincoln, Massachusetts  01773-1125
19
20
21
22          FARMER ARSENAULT BROCK LLC
23       617.790.4404    FAX  617.728.4403
24        Reporter:  Cynthia C. Henderson/RPR
```

**Page 158**

Q. When you say "encouraged," isn't it a fact that that is your goal as an investigator, to go out and find information that will either corroborate or refute a sexual assault allegation?
A. Yes.
Q. Your role is not to take someone's complaint and pass it on to the District Attorney; correct?
A. No.
Q. Your role is to do an investigation when someone makes an allegation of sexual assault. Isn't that true?
A. Yes.
Q. And the allegations that Mr. Bavis made after you had the interview with Mr. Hosseini, you chose not to investigate. Isn't that true?
  MS. AMBARIK: Objection. You can answer.
A. No, I didn't. No.
Q. Why did you choose not to do any investigation into Bavis's allegations after you had conducted the interview with Mr. Hosseini?
A. In the week in between?
Q. At any time betweeen.

**Page 159**

A. Because at that point I had sent it up to the D.A.'s office and assumed that both parties would let it take its place through the court, as most people do. Most people tend to stay away from each other after that, and that didn't occur, and it was becoming an almost daily occurrence where I had a victim stating that he was assaulted almost daily, and I took it upon myself to seek an arrest warrant.
Q. Did you even call Mr. Hosseini on his phone after any one of the telephone calls that Bavis or Joe Perry had made after you spoke with Mr. Hosseini in person to let him know there are additional allegations, "What do you say about them?"
A. No.
Q. Why not?
A. I had already spoken to Mr. Hosseini.
Q. But you didn't speak with him about any of the post Mr. Hosseini interview allegations that Bavis made; correct?
A. Right.
Q. So why didn't you at least give him a phone call and ask him if this was true?
A. Because I had brought him into my office, and he had already stated to me that he never

**Page 160**

touched anyone in an inappropriate way, so I really didn't think he was going to say, "Oh, yes. Now I am."
Q. But did you think of calling him and saying, "Have they even worked with you since then?"
A. No.
Q. Why not?
A. Because I am basing it on what Mr. Bavis told me. Mr. Bavis is my victim. At that time I have to be concerned with the fact that this is still happening to him every day as a victim.
Q. But you said your role as a police officer was to investigate these complaints that Mr. Bavis was making over the telephone post Mr. Hosseini's interview?
A. Yes.
Q. And you chose not to perform that investigation; correct?
A. As I had stated previously, this took place at the end of a week. There was a weekend in the middle. In those days I was gone. I came back, spoke with Mr. Bavis, then went and sought the arrest warrant, so there was one day that I spoke with Mr. Bavis.

**Page 161**

Q. How long did it take you to type up the application for the arrest warrant?
A. Ten minutes.
Q. How long did it take you to dial Mr. Hosseini's telephone number?
  MS. AMBARIK: Objection.
A. Seven seconds.
Q. And it would have taken you less time to talk with Mr. Hosseini about these allegations than it would have taken to apply for the arrest warrant; correct?
A. True.
Q. And was there some facet of this investigation that caused you not to at least call Mr. Hosseini?
A. Mr. Bavis was my victim. Mr. Hosseini was my suspect. We don't normally call the suspect and say, "Are you still doing this? Cut it out" after we have had an interview with them. If I have a victim saying, "This is still occurring to me," at that time the victim has to be the priority.
Q. Actually, what you do is when you get new allegations you want to speak with the suspect again; correct?