UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SEYED MOHSEN HOSSEINI-SEDEHY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ERIN T. WITHINGTON ) <br> and CITY OF BOSTON, ) <br> ) <br> Defendants. ) | Civil Action No. 04-cv-11948-RGS |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION
IN LIMINE TO EXCLUDE REFERENCE TO DEFENDANT'S FAMILY
HISTORY AS POLICE OFFICERS**

On March 22, 2004, the Defendant arrested the Plaintiff Seyed Mohsen Hosseini-Sedehy on a single charge of indecent assault and battery on a 47-year-old male Teamster, who was a laborer for GES Exposition Services, Inc. (GES) under Mr. Hosseini's supervision at one time (the Teamster). Mr. Hosseini moves this Court to exclude any testimony concerning the Defendant's family members' service as police officers during the trial because such evidence does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Accordingly, this "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402.

-2-

## BACKGROUND

*The Initial Investigation*

On December 22, 2003, the Defendant interviewed the Teamster. On that date, the Defendant, as an experienced Boston police officer of almost two thousand criminal investigations, was aware that about one half of all complainants in the course of her career had lied to her about their criminal complaints. She was aware on that date that the Teamster "had problems with the police before . . . as a suspect." The Teamster alleged that Mr. Hosseini touched his buttocks and rubbed his covered crotch against the Teamster on one occasion in 2003. The Teamster, however, refused to provide the names of alleged witnesses to the Defendant. He also could not remember the date of this alleged sexual assault. After the interview with the Teamster, the Defendant determined that she would neither seek an arrest warrant for Hosseini nor apply for a criminal complaint against him. However, the Defendant did wish to speak with Mr. Hosseini.

The Defendant talked to the president of the local Teamsters' Union in order to get Mr. Hosseini's contact information. When asked if he would provide information to contact Mr. Hosseini the Teamsters' president stated that "he was not going to get involved in [the Teamster's] bullshit." When the Defendant finally contacted Mr. Hossini, Mr. Hosseini was away on vacation. Mr. Hosseini contacted the Defendant upon his return from vacation, however, the Defendant chose not to meet with Mr. Hosseini at that time because she was out injured with a broken ankle. While the Defendant was on disability leave for two months, the Teamster called about twenty times, even after the Defendant sent a message to him that she was out of work. The Defendant's supervisor asked the Defendant to do something to stop the Teamster's repeated phone calls.

On March 4, 2004, the first day the Defendant returned to work, Mr. Hosseini traveled to her office to meet her. During the interview, Mr. Hosseini mistakenly believed that the complaining witness was a second union member under his supervision. Mr. Hosseini explained that the second union member was a lazy worker, whose allegation was already investigated by GES and proven false. The Defendant did not reveal to Mr. Hosseini that it was the Teamster who was the complaining witness. However, after speaking with Mr. Hosseini, the Defendant again decided that she would not seek an arrest warrant or a complaint against Mr. Hosseini.

The Teamster called the Defendant daily and sometimes two or three times a day to try to get the Defendant to take action against Mr. Hosseini. Approximately two months after refusing to provide the Defendant with the names of witnesses to the alleged crime, the Teamster told the Defendant that James Flynn had seen the crime. The Defendant claims that she spoke with Mr. Flynn, who was a former New York City police officer near the time that she interviewed Mr. Hosseini. Mr. Flynn told the Defendant that the Teamster's allegations were not true and warned the Defendant that the Teamster was a loudmouth.

*The Decision to Seek an Arrest Warrant*

The daily phone calls from the Teamster continued. On March 22, 2004, after another phone call from the Teamster, the Defendant decided to obtain an arrest warrant for Mr. Hosseini based solely on the Teamster's persistent phone calls, as she later admitted to the district attorney. The Defendant was not concerned for the Teamster's safety because the Teamster was bigger than Mr. Hosseini, and the Teamster reported that he would harm Mr. Hosseini if he touched him again. Before seeking the warrant, the Defendant was aware that Mr. Hosseini had no criminal record, was married, and had a five-year-old son.

In order to obtain the warrant, the Defendant represented to the Boston Municipal Court (BMC) that Mr. Hosseini was a risk of flight, even though Mr. Hosseini went to the Defendant's office the very day that she returned to work to address the false criminal allegation. Moreover, in the Application for Complaint, the Defendant misrepresented the date of the alleged sexual assault to be December 22, 2003, almost one year after the Teamster alleged in order to make the alleged crime appear fresher than reported to her. After obtaining the arrest warrant, the Defendant went to the Hynes Convention Center and arrested Mr. Hosseini in front of union members. Mr. Hosseini was booked and placed in a cell with other prisoners.

*The Defendant's Subsequent Misconduct*

Mr. Hosseini's criminal case dragged on for almost three months. During pre-trial matters, the district attorney tried to obtain follow-up police reports from the Defendant without success. Thus, it was left to Mr. Hosseini to disprove the Teamster's allegations. Mr. Hosseini's counsel was required to serve a subpoena on the Teamsters' Healthcare and the Department of Employment and Training (DET) to obtain documentary evidence showing that the Teamster was collecting either disability or unemployment benefits (or both at the same time) instead of working for GES in 2003. In fact, the Teamster had not worked for GES since the fall of 2002. Additionally, Mr. Hosseini's counsel had spent a great deal of time opposing the DET's motion to quash the subpoena served upon it. After Mr. Hosseini provided the exculpatory evidence and made several court appearances, including a trial date that was continued because the Defendant did not appear in court, the district attorney finally filed a nolle prosequi on June 14, 2004.

During the course of discovery in this civil action, which was filed three months after the criminal case was dismissed, the Defendant produced three police reports allegedly drafted on April 20, 2004, while Mr. Hosseini was trying to prove his innocence. However, the Defendant

did not provide these to the district attorney to assist him in the criminal case. Rather, these reports were generated to create the false impression that the Defendant's actions were reasonable in light of the circumstances known to her. In a report entitled Case Update 2, the Defendant claimed, contrary to her sworn statement to the BMC, that the Teamster told her on March 22, 2004, that Mr. Hosseini "was *still* touching his buttocks and rubbing against him." (emphasis added) In the course of discovery in this civil action, the Defendant generated two additional police reports dated September 27, 2004, more than three months after the criminal case was dismissed. In the first, Case Update 3, the Defendant claimed that the Teamster alleged "ongoing problems . . . with Mr. Hosseini and his inappropriate touching." In Case Update 4, the Defendant claimed that the Teamster "was not aware of the exact date when the touching occurred because it happened very frequently . . . ." Moreover at her deposition, the Defendant claimed that before seeking an arrest warrant the Teamster reported to her that "he was still being sexually assaulted on almost a daily basis by Mr. Hosseini."

**ARGUMENT**

The issues contested in this matter are: (1) whether the Defendant acted unreasonably in seeking an arrest warrant for Mr. Hosseini, in light of all the circumstances known to her on March 22, 2004, see *Forest v. Pawtucket Police Department*, 377 F.3d 52, 57 (1st Cir. 2004); (2) if so, whether punitive damages are warranted based upon the Defendant's improper motive for arresting Mr. Hosseini without probable cause, her intentional misrepresentation under oath to the BMC in order to obtain a warrant, and her subsequent attempts to cover up her violation of Mr. Hosseini's constitutional rights, see *David v. Rennie*, 264 F.3d 86, 115-116 (1st Cir. 2001); and, (3) the amount of compensatory damages (and punitive damages) due Mr.

Hosseini for the significant harm to his reputation and costs of defending the baseless criminal charge caused by the Defendant.

Evidence concerning the law enforcement experience other members of the Defendant's family does not have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Accordingly, any such evidence is not admissible because it is not relevant. Fed. R. Evid. 402.

### CONCLUSION

Mr. Hosseini respectfully asks the Court to grant his motion and exclude testimony at trial concerning the Defendant's family members' service as police officers.

Respectfully submitted,
Seyed Mohsen Hosseini-Sedehy
By his attorneys,


/s/ Gerard A. Butler, Jr.
Gerard A. Butler, Jr.
BBO # 557176
Christopher A. Duggan
BBO # 544150
Smith & Duggan LLP
Lincoln North
55 Old Bedford Road
Lincoln, MA 01773-1125
(617) 228-4400


Date:  February 6, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 6, 2007.